IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

STEVEN A. ARMATAS, Individually       )       CASE NO.  5:20-cv-01031
and as the Executor of the Estate of       )
ALEXANDER E. ARMATAS,               )
                                          )
                    Plaintiffs,           )       JUDGE JOHN R. ADAMS
                                          )
            v.                           )       MAGISTRATE JUDGE
                                          )       KATHLEEN B. BURKE
JUDGE CHRYSSA N.                   )
HARTNETT, *et al*.,                   )
                                          )       **REPORT & RECOMMENDATION**
                    Defendants.           )

## I.      Introduction

Pending before the Court is a Motion for Judgment on the Pleadings filed by Defendants

Judge Chryssa N. Hartnett ("Judge Hartnett") and Defendant Louis P. Giavasis, Stark County

Clerk of Courts ("Clerk of Courts") pursuant to Fed. R. Civ. P. 12(c) ("Motion").  Doc. 7.

Plaintiffs filed an opposition to the Motion (Doc. 10) and Defendants filed a reply (Doc. 11).

Pursuant to the Court's referral of this case to the undersigned for, among other things, issuance

of a Report & Recommendation on any dispositive motion (Doc. 4), the undersigned submits this

Report & Recommendation on Defendants' Motion.

This case arises out of a Stark County Court of Common Pleas November 21, 2019,

judgment entry by Judge Hartnett in *Steven A. Armatas, Individually and as Executor of the*

*Estate of Alexander E. Armatas, deceased v. Cleveland Clinic Foundation*, Case No.

2018CV02163, ("Underlying Litigation"), granting defendant Cleveland Clinic Foundation's

("CCF") motion for summary judgment and denying plaintiff Estate of Alexander E. Armatas' motion for summary judgment.  Doc. 1, Doc. 1-3.  In the Underlying Litigation, Plaintiffs alleged that CCF breached a contract to provide a second medical opinion regarding Alexander Armatas's medical diagnosis while he was a patient at Aultman Hospital ("Aultman").[1]  Doc. 1, Doc. 1-2, Doc. 1-3.  Steven A. Armatas ("Steven"), acting under a power of attorney for his father, Alexander E. Armatas ("Alexander"), sought the second medical opinion from CCF.  Doc. 1, Doc. 1-2, Doc. 1-3.

Plaintiffs Steven A. Armatas, Individually and as Executor of the Estate of Alexander E. Armatas, deceased (referred to collectively as "Plaintiffs") filed this action, asserting federal and state law claims against Judge Hartnett and seeking money damages based on Judge Hartnett's finding that the power of attorney signed by Alexander was not properly notarized.  Doc. 1.  Plaintiffs also seek a declaratory judgment against Judge Hartnett and the Clerk of Courts.  *Id.*

Plaintiffs assert that they are not trying to circumvent the state courts and, although they recognize that judges are generally absolutely immune from civil suits for money damages, Plaintiffs contend that exceptions to judicial immunity, i.e., actions not taken in the judge's judicial capacity and actions taken in the complete absence of all jurisdiction, apply in this case.  Doc. 1, pp. 3-4, ¶¶ 7-10, Doc. 10, pp. 3, 12-18.

For the reasons explained below, the undersigned recommends that the Court GRANT Defendants' Motion; dismiss Plaintiffs' Complaint; and enter Judgment in favor of Defendants.

**II.     Plaintiffs' Complaint**

**A.  Claims**

---

[1] Plaintiffs also sought to hold CCF liable for fraud and negligent representation.  Doc. 1-3.

Plaintiffs assert six counts in their Complaint.  They assert the following five counts against Judge Hartnett in her individual capacity: Count I (42 U.S.C. § 1983 – violation of procedural due process); Count II (42 U.S.C. § 1983 – violation of the equal protection clause); Count III (defamation); Count IV (interference with business relations); and Count V (invasion of privacy).  Doc. 1, pp. 1, 14-22.

In Count VI, Plaintiffs seek a declaratory judgment action against Judge Hartnett and the Clerk of Courts in their official capacities.  Doc. 1, pp. 23-24.  Plaintiffs request two declaratory judgment findings.  *Id.*  First, Plaintiffs request that the Court:

> Issue a declaratory judgment finding the Defendants' conduct in holding Steven A. Armatas' engagement to notarize his own father's signature on a power of attorney to be an invalid notarial act constituted an unconstitutional exercise of judicial authority . . . and that such judicial conduct has violated and continues to violate Mr. Armatas' rights pursuant to the Fourteenth Amendment to the Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

Doc. 1, p. 24.

Second, Plaintiffs request that the Court:

> Issue a declaratory judgment finding the Defendants' conduct in holding Steven A. Armatas' engagement to notarize his own father's signature on a power of attorney to be an invalid notarial act constituted an unconstitutional exercise of judicial authority . . . and therefore rendered Judge Hartnett's Judgment Entry of November 19, 2019 null and void and of no force or effect.

*Id.*  In their opposition brief, Plaintiffs acknowledge that their second request, i.e., their request that this Court "'render Judge Hartnett's Judgement Entry of November 21, 2019 null and void and of no force of effect' is inappropriate[.]"  Doc. 10, p. 11, n. 9.  Therefore, Plaintiffs are no longer prosecuting that portion of their action for declaratory judgment in Count VI.  *Id.*

### B.  Factual Allegations

In October 2014, Alexander was hospitalized at Aultman after suffering a cardiac episode.  Doc. 1, p. 6, ¶ 19.  Alexander was in a coma and on a respirator until he passed away

on December 31, 2014.  *Id.*  While Alexander was hospitalized, doctors at Aultman advised Steven that his father would not likely regain consciousness or recover in a meaningful way and recommended that Alexander be removed from his respirator.  *Id.*  Faced with a difficult decision, Steven decided to seek a second medical opinion through an online medical consulting service, MyConsult Clinical Operations Center ("MyConsult"), managed and operated by CCF. Doc. 1, p. 5, ¶ 18, Doc. 1, p. 6, ¶ 21.

Steven alleges that he entered into a contract with CCF to obtain the second medical opinion and MyConsult received most of Alexander's medical records on December 23, 2014, and additional records on December 30, 2014.  Doc. 1, pp. 6-8, ¶¶ 22-28.  As part of the process involved in seeking the second medical opinion, Steven completed questionnaires and forms, worked to retrieve his father's medical records through Health Advocate, a company that specialized in the collection and retrieval of medical records, and paid CCF $275.00.  *Id.*  As part of the process, Steven signed a Patient Consent Form on behalf of his father in his capacity as Alexander's power of attorney and provided Health Advocate and MyConsult a copy of the power of attorney signed by Alexander and notarized by Steven on December 11, 2011.  Doc. 1, pp. 7-8, ¶¶ 25-26.  Alexander passed away on December 31, 2014, without having been taken off the respirator and without the second medical opinion being rendered.  Doc. 1, p. 8, ¶¶ 29-30.

Once MyConsult and CCF learned that Alexander had passed away, MyConsult and ultimately CCF informed Steven that, as a result of Alexander's death, CCF would not be rendering a second medical opinion; the file was "closed"; and the $275.00 was refunded to Steven.  Doc. 1, pp. 8-9, ¶¶ 31-34, Doc. 1-3, p. 2.

In 2015, Steven filed a lawsuit against CCF in the Canton Municipal Court alleging various causes of action, including breach of contract.  Doc. 1, p. 10, ¶ 36.  The lawsuit was filed

solely in Steven's name.  *Id.*  The Canton Municipal Court dismissed the action "because 'as plaintiff's father is deceased, a cause of action should have been brought in the name of the executor or administrator of his father's estate,' and that, as such, 'plaintiff lacked standing to bring [the] action.'"  Doc. 1, p. 10, ¶ 38 (citing Judgment Entry of Judge Mary Falvey, dated May 18, 2016, *Steven A. Armatas v. Cleveland Clinic Foundation, et al.*, Canton Municipal Court; Case No. 2015 CVF 4368).  Steven filed an appeal with the Fifth District Court of Appeals and, in October 2016, the court of appeals affirmed the decision of the Canton Municipal Court.  Doc. 1, p. 10, ¶ 39.

Thereafter, Steven proceeded to probate court to open his father's estate and was named Executor of the Estate of Alexander E. Armatas (the "Alexander Estate") on December 15, 2016.  Doc. 1, p. 11, ¶ 40.  On November 6, 2018, Steven and the Alexander Estate filed their complaint in the Underlying Litigation.  Doc. 1, p. 11, ¶ 41.  On June 21, 2019, upon the motion of CCF, Judge Hartnett dismissed Steven, the individual, from the Underlying Litigation on the basis that Steven lacked standing to bring the claims on an individual basis.  Doc. 1, p. 11, ¶ 42, Doc. 1-3, p. 3.  CCF and the Alexander Estate each filed motions for summary judgment.  Doc. 1, p. 11, ¶ 43, Doc. 1-3, p. 1.

On November 21, 2019, Judge Hartnett granted CCF's motion for summary judgment and denied Plaintiff's motion for summary judgment.  Doc. 1, p. 11, ¶ 43, Doc. 1-3.  In her judgment entry, Judge Hartnett, explained her ruling, stating, in part:

> Steven Armatas, in notarizing his own father's signature on a document in which Steven Armatas was a party and from which he could potentially gain financial benefit, was not a valid notarial act.  Without a properly notarized signature, there is no power of attorney upon which the Estate can bring its claims against the CCF.

Doc. 1, pp. 11-12, ¶ 44 (quoting from Judge Hartnett's Judgment Entry dismissing the Underlying Litigation).

The Alexander Estate appealed Judge Hartnett's November 21, 2019, judgment entry to the Fifth District of Ohio Appeals.  The Fifth District Court of Appeals affirmed the decision. *Estate of Armatas v. Cleveland Clinic Foundation*, 2020-Ohio-3338, 2020 WL 3251170 (Ohio App. Ct. June 15, 2020).

In their opposition brief in this case, filed on August 3, 2020, Plaintiffs state that they filed a motion for reconsideration with the Fifth District Court of Appeals and that the motion remained pending at that time.  Doc. 10, pp. 2-3.  A review of the online docket for the Supreme Court of Ohio[2] reveals that the Fifth District Court of Appeals denied the Alexander Estate's motion for reconsideration on August 20, 2020, and the Alexander Estate filed a notice of appeal and memorandum in support of jurisdiction with the Supreme Court of Ohio on October 2, 2020. https://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2020/1192 (Case Number: 2020-1192).

### III.    Defendants' Motion for Judgment on the Pleadings

In their Motion, the Defendants argue that:

(1)  Judge Hartnett and the Clerk of Courts are entitled to absolute judicial immunity with respect to the federal law claims raised in Counts I, II and VI;

(2)  Plaintiffs' Complaint fails to allege any operative facts as against the Clerk of Courts and therefore the Complaint should be dismissed as to the Clerk of Courts;

(3)  Judge Hartnett and the Clerk of Courts are entitled to immunity, pursuant to Ohio Revised Code Chapter 2744, on the state law claims raised in Counts III, IV, and V;

(4)  Plaintiff's Complaint is barred under the *Rooker-Feldman* doctrine; and

---

[2] *See* Fed. R. Evid. 201(b)(2) (allowing a court "to judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." ; *see also e.g., Ashipa v. Warden, Chillicothe Corr. Inst.*, 2009 WL 3152840, *3 (S.D. Ohio Sept. 30, 2009) (taking judicial notice of online docket records available to the public through the internet).

(5) Upon dismissal of the federal claims, the Court should dismiss the pendent state law

claims.

Doc. 7, pp. 1-2.

## IV.    Law and Analysis

### A.    Standard of review

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule

12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Tp. of

Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d

509, 511-12 (6th Cir. 2001) (internal citations omitted). "For purposes of a motion for judgment

on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party

must be taken as true, and the motion may be granted only if the moving party is nevertheless

clearly entitled to judgment." *Fritz*, 592 F.3d at 722 (quoting *JPMorgan Chase Bank, N.A. v.

Winget,* 510 F.3d 577, 581 (6th Cir.2007)).  A complaint must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 570 (2007).  *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying

the plausibility standard articulated in *Twombly*).  The "[f]actual allegations must be enough to

raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The Court must

accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion

couched as a factual allegation." *Id*. (internal citations omitted). "A plaintiff's obligation to

provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Id*.  (internal quotations

omitted).

"When lack of subject matter jurisdiction is raised in a Rule 12(c) motion, the court applies the same standard of review as is applied in Rule 12(b)(1) motions." *Bielozer v. City of N. Olmsted*, No. 1:14 CV 1160, 2014 WL 4441378, at *2 (N.D. Ohio Sept. 9, 2014) (citing *Humphrey*, 2008 WL 5262769).  When lack of subject matter is raised in a Rule 12(b)(1) motion, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).  And when a court is presented with a challenge to subject matter jurisdiction, a court can "resolve factual disputes when necessary to resolve" the challenge. *Id*.

### B.    Defendants' Motion is not procedurally deficient

Plaintiffs argue that Defendants' Motion is procedurally deficient because Defendants raise defenses under Fed. R. Civ. P. 12(b)(1) and (6), which Plaintiffs contend were required to be made before Defendants filed their Answer.  Doc. 10, pp. 1-2.  However, as set forth in Federal Rule of Civil Procedure 12(c), "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Furthermore, a party may seek dismissal of a complaint in a motion under Fed. R. Civ. P. 12(c) based on lack of subject matter jurisdiction or based on failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(h); *see also Humphrey v. Global Equity Lending, Inc.*, 2008 WL 5262769, * 3 (E.D.Va. Dec. 17, 2008); *Reid v. Valley View Local School*, 2006 WL 538423, * 2 (S.D. Ohio Mar. 3, 2006) ("[A] Rule 12(b)(6) motion is required to be filed before answer; post-answer, the same matters should be presented by motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).").

Considering the foregoing, the undersigned recommends that the Court reject Plaintiffs' claim that Defendants' Motion is procedurally deficient.

### C. The Court should find that Plaintiffs' action is barred by the *Rooker-Feldman* doctrine

<u>*Rooker-Feldman* doctrine</u>

As explained by the Sixth Circuit Court of Appeals, "[f]ederal district courts do not stand as appellate courts for decisions of state courts."  *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013) (citing *inter alia Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)).  Thus,

> The *Rooker–Feldman* doctrine "prevents a federal court from exercising jurisdiction over a claim alleging error in a state court decision." *Luber v. Sprague,* 90 Fed.Appx. 908, 910 (6th Cir.2004). Federal courts' "authority to review a state court's judgment" is vested "solely in [the Supreme] Court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 292, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). On the other hand, the *Rooker–Feldman* doctrine does not bar "a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil,* 544 U.S. at 293, 125 S.Ct. 1517; *see also Evans,* 424 Fed.Appx. at 537.

*Hall*, 727 F.3d at 453.

As further explained by the Supreme Court, "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'"  *Exon Mobil*, 544 U.S. at 293 (internal citations omitted) (alterations in original).

The Sixth Circuit has considered the issue of "how to differentiate between a claim that attacks a state court judgment, which is within the scope of the *Rooker-Feldman* doctrine, and an independent claim, over which a district court may assert jurisdiction."  *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).  In doing so, the court explained that,

The inquiry then is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker–Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*Id.* The court in *McCormick* went on to explain that:

The Supreme Court made clear in *Exxon Mobil* that the doctrine is confined to those cases exemplified by *Rooker* and *Feldman* themselves: when a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law. In such a situation, the plaintiff seeks appellate review of the state court judgment, and the federal district court has no subject matter jurisdiction over such an action.

*Id.* at 395.

Recognizing that *Exxon Mobil* stated that "the *Rooker-Feldman* doctrine bar[s] federal claims of 'state court losers[,]'" the Sixth Circuit has considered the question whether "a person in privity with the actual party who loses in state court may be deemed a state-court loser."

*McCormick*, 451 F.3d at 396.  The court answered the question in the affirmative, stating:

It would be inconsistent to disallow the party in the state suit to raise a federal claim but to allow his privy to bring the exact same claim. A state party may not circumvent the Article III jurisdictional provisions simply by substituting a privy's name for his own in the federal claim. This is especially true because the source of the injury to the state court loser and his privy would be one and the same: the state court judgment. In other words, a federal claim that alleged injury from a state court judgment would seek review of that state court judgment, regardless if the state court loser or his privy filed the federal claim. The district court may not entertain jurisdiction over a claim that calls for appellate review, no matter who raises that claim.

*Id.* (footnote omitted).

**Application of *Rooker-Feldman* doctrine to this case**

Defendants argue that Plaintiffs' Complaint is barred by the *Rooker-Feldman* doctrine. Doc. 7, pp. 18-20.  Defendants assert that Judge Hartnett's summary judgment ruling in the Underlying Litigation is the "source of alleged injuries that Plaintiffs bring before this Court."

Doc. 11, p. 8.  Defendants also argue that Steven A. Armatas, individually and as Executor of the Estate of Alexander E. Armatas, were the plaintiffs in the Underlying Litigation and they are also the plaintiffs in this case.  Doc. Doc. 7, pp. 19-20, 11, pp. 7-8.

Plaintiffs contend that their lawsuit in this case is not barred by the *Rooker-Feldman* doctrine for two reasons.  Doc. 10, pp. 10-12.  First, they contend that they are not seeking to reverse Judge Hartnett's decision granting summary judgment in favor of CCF.  Doc. 11, p. 10. They assert that they are seeking "money damages for injury to [Steven's] reputation and lost business[]" and "a declaration from this Court that the acts of Judge Hartnett were an unconstitutional exercise of her judicial authority, something which Mr. Armatas seeks in order to restore his good name."  *Id.*  They contend that neither claim was litigated in state court and therefore the *Rooker-Feldman* doctrine does not bar their claim.  Doc. 10, p. 11.

Plaintiffs, plainly do not challenge the actions of a third-party.  Rather, Plaintiffs argue that, as a result of Judge Hartnett's November 21, 2019, decision, Steven has been injured.  As is clear from Plaintiffs' Complaint and the arguments they advance in opposition to Defendants' Motion, the source of Plaintiffs' alleged injury is Judge Hartnett's state court decision and their claims of error in the state court decision.  Thus, the *Rooker–Feldman* doctrine prevents this Court from exercising jurisdiction over the action.  *See McCormick*, 451 F.3d at 393; *Hall*, 727 F.3d at 453.

While Plaintiffs no longer seek a declaration from this Court that Judge Hartnett's November 21, 2019, is null and void, Doc. 10, p. 11, n. 9, the source of the alleged injury remains Judge Hartnett's November 21, 2019, decision.  Furthermore, the essence of Plaintiffs' Complaint is that the state court decision was unconstitutional, i.e., Plaintiffs seek a declaration from this Court that "the acts of Judge Hartnett were an unconstitutional exercise of her judicial

authority[.]"  Doc. 1, p. 23, ¶ 94, Doc. 10, p. 11.  However, as explained above "when a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law . . . the plaintiff seeks appellate review of the state court judgment, and the federal district court has no subject matter jurisdiction over such an action."  *McCormick*, 451 F.3d at 393.  Further, while Plaintiffs argue that they are seeking money damages based on alleged constitutional violations, which Plaintiffs assert are different claims and different types of relief than was sought in the Underlying Litigation, the source of the alleged injury <u>is</u> the state court decision, i.e., they argue that Steven has been injured as a result of Judge Hartnett's November 21, 2019, decision.

Second, Plaintiffs argue that "Steven A. Armatas, the individual, cannot be deemed a 'state court loser' because Judge Hartnett dismissed him as a party in the Underlying Litigation long before entering her final order."  Doc. 10, p. 11.  Although Steven was dismissed from the Underlying Litigation prior to Judge Hartnett's November 21, 2019, judgment entry, Steven was a plaintiff in the Underlying Litigation.  Furthermore, the Alexander Estate remained a party to the Underlying Litigation and both Steven and the Alexander Estate are parties to this action.  As discussed above, the Sixth Circuit has held that "a person in privity with the actual party who loses in state court may be deemed a state-court loser."  *McCormick*, 451 F.3d at 396.  The Sixth Circuit "has defined a privy as either (1) a successor in interest; (2) a nonparty who controlled the original suit; or (3) a nonparty who is adequately represented by a party in the original suit."  *McCormick*, 451 F.3d at 396, n. 8 (citing *Becherer v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.,* 193 F.3d 415, 422 (6th Cir.1999)).  Steven A. Armatas is the Executor of the Alexander Estate and represented the Alexander Estate in the Underlying Litigation as well as in this litigation.  Doc. 1, pp. 1, 24, Doc. 1-2, p. 16.  In light of the foregoing, Steven was in privy with

the Alexander Estate even assuming, arguendo, that Steven was no longer a "party" to the Underlying Litigation when Judge Hartnett issued the November 21, 2019, judgment entry. Steven, as Executor and attorney for the Alexander Estate, controlled the Underlying Litigation and/or his interests were adequately represented in the Underlying Litigation.

For the reasons explained herein, the undersigned finds that Plaintiffs have not shown that their Complaint asserts an independent claim. Rather, the source of their alleged injury is the November 21, 2019, judgment entry. Also, Steven is or may be deemed a "state-court loser." Accordingly, the undersigned recommends that the Court dismiss this action because the Court is without jurisdiction under the *Rooker-Feldman* doctrine. Notwithstanding the recommendation that the Court dismiss the action based on lack of jurisdiction, in the interest on completeness, as more fully discussed below, the undersigned addresses Defendants' other arguments for dismissal.

> **D.    Alternatively, the Court should dismiss the federal law claims asserted against Judge Hartnett based on judicial immunity**

**<u>Judicial immunity</u>**

Supreme Court precedents "acknowledge that, generally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (citing multiple Supreme Court cases). The Supreme Court has explained that, "[a]lthough unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Id.* (internal citation omitted). Since "judicial immunity is an immunity from suit, not just from ultimate assessment of damages . . . judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in

discovery and eventual trial." *Id.* at 11 (internal citations omitted).  Judicial immunity for "actions taken within the scope of [judges'] official duties . . . [applies] even if a judge acts erroneously, corruptly, or in excess of jurisdiction." *Blandon v. Gains*, 2010 WL 4922994, * 1 (N.D. Ohio Nov. 29, 2010) (citing *Pierson v. Ray*, 386 U.S. 547 (1967); *Stump v. Sparkman*, 435 U.S. 349 (1978)).

There are only two situations in which judicial immunity is defeated.  *Mireles*, 502 U.S. at 11.  "First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity." *Id.* (citing *Forrester v. White*, 484 U.S. 219, 227-229 (1988); *Stump*, 435 U.S. at 360).  "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12.

"[W]hether an action is performed in the defendants' judicial capacity, depends on the 'nature' and 'function' of the act, not on the act itself." *Murphy v. Nw. Sch. Dist.*, 2013 WL 1500816, at *5 (N.D. Ohio Apr. 11, 2013) (citing *Mireles*, 502 U.S. at 13; *Stump*, 435 U.S. at 362).  In assessing the "'nature' of the act, the Court must determine whether it is a function generally performed by a judge." *Id.* (citing *Stump*, 435 U.S. at 362).  The Court does not exercise "a rigid scrutiny of the particular act in question, but rather . . . only an overall examination of the judge's alleged conduct in relation to general functions normally performed by judges." *Id.* (citing *Mireles*, 502 U.S. at 13).  Looking at "the 'function' of the act alleged requires the Court to assess whether the parties dealt with the judge in his or her judicial capacity." *Id.*

Where the conduct is judicial in nature, judicial immunity may also be overcome if the act "is taken in the absence of *all* jurisdiction." *Murphy*, 2013 WL 1500816, * 6 (citing *Mireles*, 52 U.S. at 11-12; *Barnes v. Winchell,* 105 F.3d 1111, 1116 (6th Cir. 1997) and adding emphasis).

When assessing whether immunity applies, "the scope of the judge's jurisdiction is to be broadly construed." *Id.* (citing *Stump*, 435 U.S. at 356-57).  A judge is not "deprived of immunity because the action he or she took was performed in error, done maliciously, or was in excess of his or her authority." *Id.*  Judicial "actions taken in the clear absence of all jurisdiction must be distinguished from those taken in excess of jurisdiction." *King v. Love*, 766 F.2d 962, 965-966 (6th Cir. 1985); *see also Murphy*, 2013 WL 1500816, * 6.  While acting in the complete absence of all jurisdiction would preclude immunity, "merely acting in excess of authority does not preclude immunity." *Murphy*, 2013 WL 1500816, * 6 (citing *Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984)).

### Application of immunity to Plaintiffs' federal law claims against Judge Hartnett

In Counts I, II and VI, Plaintiffs raise federal law claims against Judge Hartnett. Defendants argue that those claims asserted against Judge Hartnett are subject to dismissal because Judge Hartnett is entitled to judicial immunity.  Doc. 7, pp. 7-14.

Plaintiffs recognize that "judges enjoy judicial immunity from damages even for making bad, poorly-reasoned, illogical, and/or biased decisions[,]" Doc. 1, p. 3, ¶ 8, but argue that Judge Hartnett forfeited that immunity because she was not engaged in a judicial act and because she acted in the absence of personal and subject matter jurisdiction, Doc. 10, pp. 12-18.

First, Plaintiffs argue that Judge Hartnett, in ruling on CCF's motion for summary judgment, performed a non-judicial act because in reaching that decision she found that Steven A. Armatas' notarization of his father's power of attorney was not a valid notarial act.  Doc. 10, pp. 12-13.  Plaintiffs contend that, in making that finding, Judge Hartnett disciplined Steven A. Armatas and that act was non-judicial in nature and thus Judge Hartnett is not entitled to judicial

immunity.  *Id.*  Plaintiffs contend that Judge Hartnett was not engaged in judicial acts but rather performed regulatory and punitive acts.  Doc. 10, pp. 13-14.

The undersigned finds that Plaintiffs' claim that Judge Hartnett forfeited judicial immunity because she was not acting in a judicial capacity when she rendered her decision on the summary judgment motions is without merit.  As discussed above, when assessing whether a defendant's action was performed in the defendant's judicial capacity, a court looks at the "nature" and "function" of the act.  *Murphy*, 2013 WL 1500816, at *5.  Here, the act, ruling on the parties' motions for summary judgment, is a function generally performed by a judge.  *See Cummings v. Powell*, 2015 WL 4872978, at *2 (M.D.N.C. Aug. 13, 2015) ("Ruling on a motion constitutes the quintessential judicial act to which judicial immunity applies."); *see also Reed v. Thomas*, 2008 WL 5383136, at *1 (N.D. Cal. Dec. 24, 2008) ("Ruling on a motion and exercising control over a courtroom are normal judicial functions.").

Furthermore, the parties in the Underlying Litigation were dealing with Judge Hartnett in her judicial capacity. Judge Hartnett did not discipline Plaintiff Steven A. Armatas.  Rather, she assessed and determined whether the Alexander Estate had a valid breach of contract claim against CCF in the Underlying Litigation.  Doc. 1-3, p. 2.  In reaching that decision, she made findings based on her interpretation of the law relating to powers of attorney and notary publics.  Doc. 1-3, pp.  4-6.   Rendering a decision relating to a breach of contract action is an action normally performed by common pleas judges.  The undersigned finds that Plaintiffs' attempt to cast Judge Hartnett's action in ruling on motions for summary judgment as non-judicial in nature is unavailing.

Second, Plaintiffs argue that, even if Judge Hartnett's rulings were "judicial in nature," Judge Hartnett's actions were taken in the complete absence of jurisdiction.  Doc. 10, pp. 14-18.

They contend that Judge Hartnett lacked personal jurisdiction over Steven A. Armatas, individually, because she dismissed him from the Underlying Litigation prior to rendering her summary judgment decisions. Doc. 10, pp. 14-15. They also contend that Judge Hartnett lacked subject matter jurisdiction because regulation of notary public licensure under O.R.C. § 147.032 falls within the Ohio Secretary of State. Doc. 10, pp. 15-18.

Notwithstanding Steven A. Armatas' dismissal as a party to the Underlying Litigation in his individual capacity prior to Judge Hartnett's issuance of her November 21, 2019, decision, Judge Hartnett did not act in the complete absence of jurisdiction. As explained below, Plaintiffs have not shown that Judge Hartnett lacked subject matter jurisdiction over the Alexander Estate's claims, which remained pending following Steven A. Armatas' dismissal. The fact that Judge Hartnett, in her decision, discussed evidence regarding Steven A. Armatas that was pertinent to the case before her does not mean she acted in the complete absence of jurisdiction. Plaintiffs' disagreement with Judge Hartnett's consideration of evidence relating to the power of attorney signed by Alexander and notarized by Steven A. Armatas is not a basis upon which to conclude that Judge Hartnett acted in the complete absence of jurisdiction.

In arguing that Judge Hartnett lacked subject matter jurisdiction in the Underlying Litigation, Plaintiffs rely on O.R.C. § 147.032. Doc. 10, p. 17. Per Plaintiffs, O.R.C. § 147.032, with an effective date of September 19, 2019, two months prior to Judge Hartnett issued her November 21, 2019, judgment entry, provided the Ohio Secretary of State with authority to investigate believed violations of the Ohio Notary Act and hold disciplinary hearings, if deemed appropriate. Doc. 10, p. 17. They argue that, by rendering her summary judgment decision, Judge Hartnett "usurped the Secretary of State's powers to initiate an investigation of possible

notarial misconduct" and "contravened them by failing to afford Mr. Armatas a hearing of any kind before 'imposing sentence.'" Doc. 10, p. 17.

While the cited statute grants authority to the Ohio Secretary of State to take action with respect to Ohio notary publics, that statute does not divest the courts of common pleas of the jurisdiction provided under the Ohio Constitution. The Ohio Constitution vests "[t]he judicial power of the state . . . in a supreme court, courts of appeals, courts of common pleas and divisions therof, and such other courts inferior to the supreme court as may from time to time be established by law." Ohio Const., Article IV, Sec. 1. The Ohio Constitution provides further that, "The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters[.]" Ohio Const., Art. IV, Sec. 4(B).

Moreover, as set forth in O.R.C. § 2305.01, "Except as otherwise provided by this section or section 2305.03[3] of the Revised Code, the court of common pleas has original jurisdiction in all civil cases in which the sum or matter in dispute exceeds the exclusive original jurisdiction of county courts and appellate jurisdiction from the decisions of boards of county commissioners." O.R.C. § 2305.01. When filing the Underlying Litigation, Plaintiffs recognized the court of common pleas' jurisdiction under O.R.C. § 2305.01. *See* Doc. 1-2, p. 3, ¶ 8 ("This Court has subject matter jurisdiction over this action pursuant to R.C. 2305.01 and in accordance therewith . . .). Plaintiffs' present argument that Judge Hartnett acted in the absence of *all* jurisdiction when rendering her decisions in the Underlying Litigation is without merit.

For the reasons explained herein, the Court should find that Judge Hartnett is entitled to judicial immunity as to the federal claims asserted against her and should dismiss those claims.

### F. The Court should dismiss the claims asserted against the Clerk of Courts

---

[3] O.R.C. § 2305.03 addresses when lapse of time is a bar to civil action.

Defendants argue that the claims asserted against the Clerk of Courts are subject to dismissal because the Clerk of Courts is entitled to quasi-judicial immunity.  Doc. 7, pp. 7-14. Alternatively, Defendants argue that Plaintiffs' lawsuit against the Clerk of Court should be dismissed because Plaintiffs have failed to allege any operative facts against the Clerk of Courts. Doc. 7, pp. 14-16.

Immunity afforded to judges "has also been extended to non-judicial officers performing 'quasi-judicial' duties." *Marshall v. Green*, 2010 WL 1959514, * 2 (W.D. Ky May 17, 2010) (citing *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)); *see also Teats v. Johnson*, 2012 WL 4481436, * (M.D. Tenn. Aug. 20, 2012), ("In the Sixth Circuit, 'it is well established that judges and other court officers enjoy absolute immunity from suit on claims arising out of the performance of judicial or quasi-judicial functions.'") (quoting *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988)), *report and recommendation adopted*, 2012 WL 4471257 (M.D. Tenn. Sept. 26, 2012).  Thus, "court officers such as clerks of court" have been found to be entitled to absolute immunity.  *Howard v. Ohio State Supreme Court*, 2014 WL 3670996, * 4 (S.D. Ohio July 23, 2014) (citing *Foster*, 864 F.2d at 417), *report and recommendation adopted*, 2014 WL 5460572 (S.D. Ohio Oct. 27, 2014).

Plaintiffs do not dispute that "court officers enjoy immunity from claims arising out of the performance of judicial or quasi-judicial functions[.]"  Doc. 10, p. 19.  They argue, however, that the Clerk of Courts should be denied immunity because Judge Hartnett should be denied immunity.  Doc. 10, p. 20 (arguing that, "if Judge Hartnett acted outside the scope of her authority, then Mr. Giavasis must have done so as well[]").  Plaintiffs do not substantively respond to Defendants' alternative reason for dismissing the claims raised against the Clerk of Courts, i.e., that Plaintiffs failed to allege sufficient operative facts against the Clerk of Courts.

Since the undersigned has recommended that the Court find that Judge Hartnett is entitled to judicial immunity with respect to the federal law claims and because Plaintiffs rest their claim against the Clerk of Courts on a finding that Judge Hartnett is not entitled to judicial immunity, the undersigned recommends that the Court dismiss Plaintiffs' action against the Clerk of Courts. Alternatively, since Plaintiffs have not substantively responded to Defendants' alternative argument for dismissing the action against the Clerk of Courts, the undersigned recommends that the Court dismiss Plaintiffs' claims against the Clerk of Courts for failure to allege facts sufficient to state claims against him.

### G.    The Court should dismiss the state law claims or, alternatively, decline to exercise supplemental jurisdiction over them

Defendants argue that, under Ohio's Political Subdivision Tort Liability statutes as set forth in R.C. Chapter 2744, Plaintiffs' state law claims in Counts III (Defamation), IV (Interference with Business Relations), and V (Invasion of Privacy) are subject to dismissal. Doc. 7, pp. 16-18.  They contend that:

> Both the Clerk of Courts and Judge Hartnett are entitled to a blanket grant of immunity, pursuant to R.C. 2744.02(A), as to Plaintiffs' state law claims of defamation, interference with business relations, and invasion of privacy. Plaintiffs have not pleaded any exception to that immunity under R.C. 2744.02(B)(1-5) and, even if they had, absolute judicial and quasi-judicial immunity would apply under R.C. 2744.03(A)(1). Plaintiffs' claims for defamation, interference with business relations, and invasion of privacy must therefore be dismissed.

Doc. 7, p. 18.

Alternatively, Defendants request that the Court decline to exercise supplemental jurisdiction over the remaining state law claims.  Doc. 7, p. 20.

Plaintiffs respond by citing O.R.C. § 2744.03(A)(6), which sets forth instances in which an employee may not be immune, including when "(a) the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) the

20

employee's acts or omissions were with malicious purpose, in bad faith, or in wanton or reckless

manner."  Doc. 10, p. 18 (quoting O.R.C. § 2744.03(A)(6)(a) and (b)).  Plaintiffs then argue,

> Recall that Plaintiff's principal argument herein is that judges are not immune for
> actions taken in complete absence of all jurisdiction, or for non-judicial acts.
> Therefore, should this Court rule Judge Hartnett's actions were taken in complete
> absence of all jurisdiction or that her acts were non-judicial in nature, then it stands
> to reason she acted "manifestly outside the scope of [her] employment or official
> responsibilities," under state law as well.

Doc. 10, p. 18.

Thus, Plaintiffs sole argument in opposition to Defendants' request to dismiss the state

law claims is premised on this Court finding that Judge Hartnett's actions were taken in the

complete absence of all jurisdiction or that her actions were non-judicial in nature.  As discussed

above, Plaintiffs' arguments in that regard are without merit.  Accordingly, the Court should

dismiss Plaintiffs' state law claims on the basis of state law immunity.  Alternatively, should the

Court adopt the undersigned's recommendation to dismiss the federal law claims, the Court may

decline to exercise supplemental jurisdiction over the remaining state law claims.

## V. Recommendation

For the reasons explained herein, the undersigned recommends that the Court GRANT

Defendants' Motion; dismiss Plaintiffs' Complaint; and enter Judgment in favor of

Defendants.  In the alternative, if the Court declines to exercise supplemental jurisdiction over

the state law claims, the undersigned recommends that the Court GRANT Defendants' Motion as

to the federal law claims; enter Judgment in favor of Defendants as to the federal law claims; and

dismiss the state law claims without prejudice.

Dated: November 4, 2020                     /s/ Kathleen B. Burke
                                            Kathleen B. Burke
                                            United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).